HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant, *v.*
EDWARD EVERETT BUCHANAN, Respondent.

Third Department, March 8, 1922.

Motor vehicles — negligence — action for loss of mare struck by defend-
ant's automobile — jury erroneously instructed that placing incompe-
tent man in charge of mare might be considered on question of
contributory negligence — conduct of such man at time of accident
sole question on that branch of case — mare with three other horses
had been proceeding along highway but were stopped at instant of
collision — defendant's rights in driving past dependent on whether
horses were stopped by drivers for personal reasons or because of
approach of automobile.

In a negligence action to recover for the loss of a mare due to her being struck by
defendant's automobile, it appeared that the mare and three other horses, in
charge of two young men named Dodd and Bone, each about nineteen and a
half years old, were traveling along a public highway, having a macadamized
surface sixteen feet wide.   Dodd was riding one of the horses and leading another
beside him and at his right.   About ten or fifteen feet behind this pair came
Bone riding the mare in question and leading another horse beside him and at
his right.   The horses being ridden were entirely or partly off the macadam, the
other horses being still farther out of the road.   As they were about opposite a
wagon drawn by two horses which was standing still on the other side of the
road, partly on and partly off the macadam, defendant's automobile approached
facing the four horses and passed between them and the wagon, striking the
mare in question.   Defendant testified that he kept to the center of the road
in passing.   The four horses were standing still at the *instant* of the collision.
There was evidence justifying the inference that the horses were brought to a
stop just at the instant of collision because of the rapid approach of defendant's
automobile and to facilitate its safe passage between the four horses on one
side and the wagon on the other.   The defendant introduced evidence on the
trial indicating that the selection of Bone for this particular work might have
been indiscreet and defendant's counsel referred to Bone as " this inexperienced
boy."

*Held*, that it was reversible error for the court to charge: " that if the jury should
find that the owner of the mare or his agents were guilty of negligence in intrusting
the care of this mare under all the circumstances in the case to Bone, that negli-
gence is attributable to the plaintiff in this case," as it permitted the jury to
predicate contributory negligence on the mere fact of placing Bone in charge
of the mare when the only question for the jury on this branch of the case was
whether Bone at the time of the collision exercised due care.

*It seems*, that if the horses had stopped for reasons personal to Dodd or Bone
and independently of the approaching automobile, and were thus standing, as
defendant claims, when he first saw them, he was at liberty to pass them, holding
the center of the road, providing he used due care; but, if the progress of the
horses was halted because of the rapid and reckless approach of defendant's
automobile and he was primarily responsible for the temporary interruption
of their journey, then he had no right to hold the center of the road, but he
should have kept to the right of the center and reduced his speed or even stopped,
if necessary, behind the wagon which impeded his progress until the four horses
had passed him.

APPEAL by the plaintiff, Hartford Accident and Indemnity
Company, from a judgment of the Supreme Court in favor of the

defendant, entered in the office of the clerk of the county of Broome on the 11th day of July, 1921, upon the verdict of a jury of no cause of action, and also from an order entered in said clerk's office on the same day denying plaintiff's motion for a new trial made upon the minutes.

*Hinman, Howard & Kattell* [*Thomas B. Kattell* of counsel], for the appellant.

*H. D. Bailey* [*I. T. Deyo* of counsel], for the respondent.

COCHRANE, P. J.:

September 29, 1919, four horses belonging to Mr. Kilmer were traveling on the macadam State highway toward Binghamton. They were being taken from his stock farm to Binghamton where he resided. They were in charge of two young men named Dodd and Bone, each at the time being about nineteen and a half years old. Dodd was riding one of the horses and leading another beside him and at his right. About ten or fifteen feet behind this pair came Bone riding one of the horses named Rubia Grande and leading another beside him and at his right. All the witnesses agree that the two horses being ridden were entirely or partly off the macadam and on their right side of the road and of course the other two horses were still farther out of the road. They came to a point where there was a fruit stand on the opposite side of the road. Standing in front of this fruit stand and about opposite the horses was a wagon drawn by two horses, one of the occupants of which wagon was negotiating with the proprietor of the fruit stand. This being the situation, a Pierce-Arrow car owned and driven by the defendant, who was accompanied by his wife on their way from Elmira to New York, approached facing the four horses and passed them on one side and the wagon on the other. Rubia Grande came in contact with the automobile, sustained a broken left hind leg, and had to be killed. She is claimed to have been a valuable breeding mare and had engaged in running races. All of the horses had unusual value. Rubia Grande was insured by the plaintiff for $5,000. Plaintiff paid this insurance to the owner, was subrogated to his rights and brings this action against the defendant for negligence in causing the death of the horse. The jury rendered a verdict in favor of the defendant.

All the witnesses agree that the four horses were standing at the instant of collision. Defendant and his wife testified that when they rounded a curve in the road and first came into view of the horses 700 or 800 feet distant, Dodd had dismounted and the horses were at a standstill. The testimony of a number of witnesses called by the plaintiff justifies the inference that the

horses were brought to a stop just at the instant of collision because of the rapid approach of the defendant's automobile and to facilitate its safe passage between the four horses on one side of the road and the wagon drawn by the two horses on the other side. Possibly this distinction was not sufficiently appreciated at the trial but it seems important. If the horses had stopped for reasons personal to Dodd or Bone and independently of the approaching automobile, and were thus standing as the defendant claims when he first saw them, he was at liberty to pass them, holding the center of the road, providing in doing so he used due care. The macadam was sixteen feet in width. The Kilmer horses were at one edge. The horses and wagon on the other side of the road were partly on and partly off the macadam. Defendant testified that as he passed through he kept the center of the road and he and his wife estimated the speed of their car at eighteen or twenty miles an hour. Witnesses for the plaintiff estimated its speed at thirty to forty-five miles an hour. But if the progress of the horses was halted because of the rapid and reckless approach of the defendant's automobile and he was primarily responsible for the temporary interruption of their journey then he had no right to hold the center of the road as he says he did but he should have kept to the right of the center and reduced the speed of his automobile or even stopped if necessary behind the horse-drawn vehicle which impeded his progress until the four horses had passed him. (Highway Law, § 286, subd. 9, added as subd. 3 by Laws of 1910, chap. 374, as amd. by Laws of 1918, chap. 540; General Highway Traffic Law, § 12, subd. 6, and § 2 defining the word "vehicle.") We have briefly indicated the different phases of the case suggested by the evidence without epitomizing the same in detail to show that a close question of fact existed in respect to the negligence of the defendant.

If, as the evidence of the plaintiff's witnesses indicates, the four horses were stopped to facilitate the passage of the defendant's automobile, the question naturally suggests itself why, instead of stopping the horses, did not Dodd and Bone stop the automobile as they might have done "on signal by raising the hand." (Highway Law, § 286, subd. 8, added as subd. 2 by Laws of 1910, chap. 374, as amd. by Laws of 1918, chap. 540.)\* They did not do so. Their failure to do so may have a bearing on the question of their contributory negligence. This question, like that of the defendant's negligence, was a close one for determination by the jury. The jury rendered a general verdict and it is, therefore, impossible to say that they did not find the defendant negligent, but

---

\* See General Highway Traffic Law, § 12, subd. 14.— [REP.

absolved from liability because of negligence also on the part of Bone. That being so and the case on both questions being close, it is our duty to scrutinize the record for the purpose of determining whether errors were committed which may have affected the result.

After a charge of unusual clarity and comprehensiveness which ought to have been satisfactory to both parties, the defendant's counsel requested the court to charge " that if the jury should find that the owner of the mare or his agents were guilty of negligence in intrusting the care of this mare under all the circumstances in the case to Bone, that negligence is attributable to the plaintiff in this case." The court charged the request and the plaintiff excepted. Just previously in this same connection counsel had referred to Bone as " this inexperienced boy." This characterization illustrates the vice of the charge. The only question for the jury on this branch of the case was whether Bone at the time of the collision exercised due care. If he was then negligent the plaintiff could not recover. If he was not then negligent, no matter how inexperienced or incompetent generally he may have been, the plaintiff could recover provided the defendant was negligent. (*Gorman* v. *New York, Chicago & St. Louis R. R. Co.*, 194 N. Y. 488; *Warner* v. *New York Central R. R. Co.*, 44 id. 465, 471.) Permission to the jury to predicate contributory negligence on the mere fact of placing Bone in charge of Rubia Grande was clearly erroneous. It diverted the minds of the jury from the real question as above indicated and allowed them to speculate on the possibility that if some older or more experienced or competent person had been in charge he might have done something to obviate the accident. He might have signaled the defendant to stop or taken some other precaution. The defendant proved at the trial that Bone might have been a person of somewhat irresponsible habits; that he had never been employed by Mr. Kilmer except on this particular occasion to ride the horse from his farm to Binghamton; that he had never been on the back of a running horse and other facts indicating that his selection for this particular work might have been indiscreet. It further appeared that a man by the name of Hadsell, the superintendent of Mr. Kilmer's stock farm and the man in charge of these horses, supervised the task of taking them to Binghamton. He accompanied them in a Ford automobile to a point about a quarter of a mile from the place of the accident. There he left them and hastened on to the next village. Quite naturally, therefore, under these circumstances the jury might attribute negligence to the fact of leaving the horse in charge of Bone and might fail to confine their attention solely to the conduct

of Bone in his management of the horse on the occasion of the accident. This the charge permitted. It constituted the last words to the jury before they began their deliberations. It must have made an impression on their minds. The case being so evenly balanced on the facts, we are not satisfied that the error was unprejudicial. Defendant's counsel certainly hoped to derive some benefit from the charge or he would not have requested it and we are not persuaded that his hope was unrealized.

For this reason the judgment and order must be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur.

Judgment and order reversed and new trial granted, with costs to appellant to abide the event.